JOE CHUMLEY V. THE STATE.

*No. 6637.   Decided June 26.*

1.   **Theft—Accomplice Testimony.**—See the opinion *in extenso* for the substance of evidence adduced on a trial for theft, *held* to inculpate the principal State's witness as an accomplice; and note the same for the substance of remaining proof *held* insufficient to corroborate the testimony of the said accomplice.

2.   **Diligence—New Trial.**—See the brief of counsel for the appellant, adopted by the court as its opinion on the question, for reasons why absent testimony set out in an application for continuance is held to be material, and in the light of the evidence on the trial, probably true; wherefore, the continuance having been erroneously refused, the trial court should have awarded a new trial    And note the same for a statement of the case.

APPEAL from the District Court of Milam.   Tried below before Hon. J. N. Henderson.

This conviction was for the theft of a mule, and the penalty assessed by the verdict was a term of seven years in the penitentiary.

*T. S. Henderson,* for appellant.—I submit that the court erred in refusing the defendant's application for a continuance based upon the absence of his witness Ervin Estes. The materiality and probable truth of the testimony of this witness becoming manifest upon the trial, I contend that the court committed further error in refusing to award the defendant a new trial.

Upon the issue of diligence to obtain the presence of the absent witness at the trial, the record will demonstrate these facts: The said Estes was in attendance upon the court as a witness in the case at the fall term, 1888. The case was then continued, and at the spring term, 1889, it was set for trial on the second day of May. On the third day of May, the said witness not being present, defendant caused an attachment to issue to Falls County for him, he being then in jail in said county. On May 4, 1889, the said witness was brought to Cameron, where his case was pending, and placed in jail. No return was made on the writ, but the witness was placed in jail and was not produced in court. On account of other matters, and not on application of defendant, this case was passed over from day to day after said fourth day of May, 1889, until the eighteenth day of May, 1889, when the defendant was brought from the jail into court for trial. The said witness Estes was, on the evening of May 17, 1889, released from jail and discharged from custody by the sheriff of Milam County, he having given bond in the Falls County cases against him. The sheriff did not bring him into court, and did not notify defendant's counsel that he had discharged the witness. On May 18, 1889, when the case was called for trial, the witness was absent and could not be found, although according to defendant's information he was in town that morning, and stated that he was waiting for this case to be called for trial.

Was this diligence? I maintian that under the circumstances of this case it was. It is true the court undertakes in the explanation appended to the bill of exceptions to argue that it was not diligence, because, according to the court's statement, the witness and the defendant were in jail together until the evening before the trial, and the defendant knew when the witness was discharged from jail. Now, it may be assumed that the court put the facts just as strong as they could be made. So here is the situation: Defendant in jail at Cameron, wishes at his trial a witness who is in jail in Falls County. He takes the proper steps to have the witness brought to Cameron, and he is brought to Cameron under attachment. He is not produced in court, but by the sheriff of Falls County is delivered to the sheriff of Milam County as a witness and a prisoner. The sheriff of Milam County, on the evening before this

case is to be tried, discharges said witness from his custody entirely. Defendant's counsel are not notified of his discharge and expect him to be present at the trial, but when the trial is called they inquire for him and learn that he was in town a short time before but can not now be found. It is true that defendant knew that witness had been discharged from jail, but he did not know that he had been discharged from the attachment as a witness. On the contrary, he supposed that the sheriff had performed his duty as to said witness by either taking his bond or recognizance or by reporting to defendant's counsel. Now, if defendant had been a lawyer he might have inquired more carefully into the discharge of said witness. But he was a prisoner of the State; he had exercised the court's process; had placed his witness in the hands of the court's officer, and had a right to rely upon the belief that the officer would do his duty. By whose fault was this witness discharged? By the sheriff's. Who was the keeper of this witness? The court's officer. So, I say, the defendant is not to blame, but did use due diligence. But suppose he did not use strict diligence. Did he not use such reasonable diligence as would entitle his application to consideration if the testimony of the witness was material and probably true? He surely did. And this brings us to the second question.

Was the testimony material, and was it probably true? Its materiality is apparent, because its effect was to show that defendant did not steal the animal, but traded with the State's witness John Ward for it in Falls County. To determine the probable truth of said testimony it becomes necessary to review the substantial evidence adduced on the trial, or at least to epitomize the history of the case.

The State's whole case was staked on the truth of John Ward's testimony. He alone testified to facts upon which defendant could by any possibility be convicted. He testified, in brief, that in June, 1887, he was searching for this very mule under instructions from his employer, the owner. He was informed that the mule was near Cal Smith's place in Falls County, about three miles from the Milam County line. On the very day the mule was missed he was looking for it near Cal Smith's, and on that day or the next, and while he was still searching for the mule, he met defendant in Milam County, some three miles from the animal's range and about a quarter of a mile down in Milam County, with the mule. He did not demand the mule, but did tell defendant that it was Drennan's mule, and defendant told him that it did not matter if it was; that Drennan would never get it, and that he was going to take it home. Defendant also said that nobody knew about the mule but Ward, and that if "I (Ward) told it he would make peace with me. I afterwards saw the mule in Milam County. Defendant was trading it. He said it had gotten away from him, and he had followed and caught it." He also testified that

although he was at that very time searching for the mule for the owner, yet he made no report of the theft, and although he knew Drennan had. offered a fifty-dollar reward for the mule, yet .he never disclosed these facts until more than one year afterwards when he, Ward, had been sent. to jail by an examining court on the charge of cow-theft, and had made such terms with the State as that he might turn informer.  The foregoing testimony was the State's case, and we maintain that it placed Ward in the attitude of an accomplice.

As part of his case the defendant undertook to prove that Ward traded him the mule in Falls County.  .Ward being asked about the trade, de-- nied it, and said.that the sorrel mare defendant claimed to have traded to him for the mule had been purchased by him from defendant.  The defendant showed by Mosely Smith and Ira Bishop that on the 11th day of June, 1887, they saw Ward looking for the mule in Falls County;. that Ira Bishop had seen the mule that very day, and that Ward was looking for it about 2 or 3 o'clock in the evening.  He proved by John Estes that on Saturday before the second Sunday in June, 1887, said. witness did, late in the evening, at a well on Estes's place, in Falls County, trade the mule to defendant for a sorrel mare and $35; that the well was. about five or six miles from Cal Smith's place, where the mule ran, and eight or nine miles from the Wallace ranch, where Ward lived, and about. the same distance from where defendant lived; and that the absent wit-- ness, Ervin Estes, was present and saw the trade made.  The defendant. alleged in his application for a continuance that he expected to prove the. same facts by Ervin Estes that he did prove by John Estes.

Now, was not this testimony probably true within the meaning of the. law?  Ward in his testimony gave a sensational account of the alleged theft; confessed that he had guilty knowledge of it, and that although. he was appealed to by all of the motives which could compel a faithful. and honest servant to protect the interests of his employer, yet from choice he preferred to screen the thief.  The law calls him infamous, and will not sustain a conviction on his uncorroborated testimony.  It is. characterized as improbable until sustained by other proof.  His testimony was flatly contradicted by the testimony of John and Ervin Estes. Their testimony made John Ward the thief.

The probability of Ervin Estes's testimony is sustained by the follow-- ing reasons:  1.  Ward's testimony was improbable.  2.  Ward impli- cated himself in the theft.  3.  Ward admitted that he did get the sorrel mare from defendant, and was in possession of her about the time he says. defendant stole the mule.  4.  Ward was the last person seen by any disinterested witness on the range of the mule.  5.  He was so seen on the day the mule disappeared, at about 2 or 3 o'clock in the afternoon;. and late in the evening about the same date—June 11—he was seen to·

trade the mule to defendant at Estes's well, as testified to by John Estes.
6.   The proposed testimony of Ervin Estes was natural and reasonable, was strongly corroborated by the other testimony in the case, and was only contradicted by John Ward, an accomplice.   It was just as probable as Ward's testimony, was directed to the very issue in the case, and defendant ought to have had it on his trial.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. — We think it most apparent from the statement of facts in this case that the evidence of the State's witness John Ward, upon which this conviction mainly rests, must be treated as accomplice testimony, and that to warrant the conviction upon this testimony it must have been corroborated by other testimony as to his material statements inculpatory of defendant.   We do not believe the other facts do sufficiently corroborate this witness's evidence.   Without Ward's evidence no case is established against defendant, and in the light of other undisputed facts this evidence comes in most questionable shape. He was employed to look after and water this animal by the owner; he says he saw the defendant with it twice in his possession, and that defendant notified him that he, defendant, intended to appropriate it; all of this, he says, occurred a year before he, Ward, disclosed the fact to the owner, though the latter had offered fifty dollars reward for it.

Defendant's theory of the case was that he had purchased, or rather traded for, the mule from this same witness Ward, giving him in the trade a sorrel mare and $35.   Ward admits that he owned a sorrel mare, but claims he purchased her from defendant.   Defendant's theory of the case, with the time, place, and circumstances of his trade with Ward for the mule, was testified to by his witness John Estes, who further testified that one Ervin Estes was also present at said trade and saw it made.   Defendant made an application for a continuance on account of the absence of this witness, Ervin Estes, which was overruled by the court for want of diligence, it being a second application, and again overruled in connection with the motion for a new trial because, in the opinion of the court, the proposed testimony, in the light of the other evidence, was not probably true.

Was there sufficient diligence, and was the evidence probably true? These questions are so fully, fairly, ably, and to our minds conclusively presented and argued in the brief of counsel for appellant, that we refer to his brief (which the Reporter will publish) for the reasons which induce us to answer them in the affirmative.

We are of opinion that the court erred in refusing the new trial, and we are further of opinion that the accomplice testimony, in addition to

its own questionable character, is not sufficiently corroborated to warrant a conviction, which appears to have been based mainly upon it.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.